THOMAS, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 77-242-CR. Argued October 10, 1979.—
Decided November 6, 1979.*
(Also reported in 284 N.W.2d 917.)

For the plaintiff in error the cause was argued by *Jack E. Schairer*, assistant state public defender, with whom on the briefs was *Howard B. Eisenberg*, state public defender.

For the defendant in error the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

COFFEY, J.   This is a review of judgment convicting the plaintiff in error of sexual intercourse with a child, contrary to sec. 944.10(1), Stats., and an order denying a new trial.

The plaintiff in error, Frank Vincent Thomas, Jr. (hereinafter the defendant) was charged with sexual intercourse with a minor female, contrary to sec. 944.10 (1), Stats. 1973, and having sexual intercourse with a female he knew to be mentally deficient, contrary to sec. 944.02(2), Stats. 1973.  A trial to the court was held on March 16 and 17, 1977.

The complaining witness (hereinafter called Sandra) at the time of trial, was eighteen years of age with the mental capacity of a six year old child.  She was sixteen years old at the time of the alleged act of sexual intercourse.  The state's first expert witness was Sandra's

special education teacher. She testified that Sandra's memory skills were impaired but her ability to remember events observed visually are superior to her ability to recall auditory perceptions or things said, especially if the event varied from the routine.

The next witness called was Sandra's mother. She testified that she had been a witness to the statement her daughter gave to an officer of the Rock County Sheriff's Department (hereinafter referred to as the sheriff.) The defense objected to the introduction of the statement, but the trial court ruled that Sandra's mother could testify as to the giving of the statement, but nothing as to its contents ". . . because it's clearly hearsay." The defense counsel did not cross-examine the mother about the statement.

The prosecution then called Sandra's aunt to the witness stand. On direct examination she also testified that she had witnessed her niece give a statement to the sheriff. She further testified that in the month of August, 1975, between the 3rd and the 9th, she went to South Carolina to visit her daughter. The defense at that time reserved its right to cross-examine the aunt until there was ". . . some reason to cross-examine" and the court stated that the witness would be available.

The state's next witness was the victim, Sandra. On direct examination she testified that the defendant had offered her a ride in his car and drove her to a boat landing on Lake Koshkonong and while there they engaged in sexual intercourse. She stated that the incident took place after her aunt had returned from her vacation. The prosecution did not question her regarding her prior statement given to the sheriff.

On cross-examination Sandra stated that she really did not remember what had happened because it occurred so long ago. She testified that her testimony on direct examination was based on what she remembered testi-

fying to at the preliminary hearing. Furthermore, she said that her testimony on direct examination was based on what the prosecutor told her to say and not what she actually remembered. She also remembered talking to Captain Dilley of the Rock County Sheriff's Department but testified that at the time of making her statement she could not remember being in the car with the defendant. She also said she told Captain Dilley that her mother and aunt told her to say that the defendant had laid on top of her.

However, on re-direct, Sandra stated that her mother ". . . hasn't sat down with me to talk this case over with. She just told me to tell the truth." She testified that she could not recall what the prosecutor told her to say. Lastly, she testified that she did not remember what happened in the summer of 1975 or more specifically during the month of August, but she did remember being with the defendant in his car, although she was not sure of the date.

The state's second expert witness, Dr. Cohen, a physician at the Edgerton Memorial Community Hospital testified that on the 24th of November, 1975 he treated Sandra for heavy vaginal bleeding as a result of an incomplete spontaneous abortion. He also testified that it was his opinion, to a reasonable degree of medical certainty, that conception occurred, within a two-week span, "about the middle of August."

The state then sought to introduce into evidence the statement Sandra gave to Captain Dilley. The defense objected to the admission of the statement into evidence and the court sustained the objection. The state argued that the statement was admissible as an exception to the hearsay rule under sec. 908.03(24), Stats.[1] The state then rested.

---

[1] "908.03. **Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule even though the declarant is available as a witness:

Prior to the commencement of its case, the defense moved for dismissal of both charges on the grounds that the state had presented insufficient evidence to prove the defendant's guilt as to either charge. The defendant contended that the victim's testimony required some type of corroboration and since no such testimony or evidence was introduced the evidence was insufficient to establish guilt as to either count beyond a reasonable doubt. The defendant also moved to dismiss the charges on the grounds that the information did not adequately apprise the defendant of the criminal charges against him as the allegation that the offense occurred ON OR ABOUT AUGUST 15, 1975 was not specific and therefore did not apprise him of the time span within which he must defend. The court took both motions under advisement.

The next day the trial court *sua sponte* reversed its previous ruling on the admissibility of the victim's prior statement and admitted it into evidence. The trial court ruled that the statement was admissible pursuant to sec. 908.01(4)(a), Stats.,[2] as a prior, consistent statement offered to rebut an express or implied charge of recent fabrication or improper influence or motive.

The defense argued that the court's ruling was incorrect because the victim testified that she told Captain

"...

"(24) OTHER EXCEPTIONS. A statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness."

[2] "908.01

". . . . (4) STATEMENTS WHICH ARE NOT HEARSAY. A statement is not hearsay if:

"(a) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

"...

"2. Consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or

"..."

Dilley only what her mother told her to say and that therefore the statement was not her own prior statement. The defense also argued that the statement must be adopted by the victim while she was on the witness stand in order for it to be admissible under sec. 908.01 (4) (a), Stats. The trial court rejected these arguments and ruled:

". . . She does not have to adopt it on the stand. You apparently had the statement. You could have cross examined her on the statement if you wished to. You, for some reason, chose not to, and, therefore, you waive your right to cross examine on that point. I think the statement is admissible. I am going to admit it."[3]

The defense called the defendant to testify on his own behalf and he denied ever having had sexual intercourse with the young girl.

At the close of the testimony the trial court heard arguments on the defendant's motions to dismiss. The court denied the motion to dismiss the charge of having sexual intercourse with a child, because the victim's testimony was uncorroborated and thus insufficient. The trial court ruled that while her testimony required corroboration, her prior statement, the evidence that she had been pregnant and that conception occurred in mid-August all combined to provide corroboration. However, the court did grant the defendant's motion to dismiss the charge of having sexual intercourse with a person known to be mentally deficient, because the court was not convinced beyond a reasonable doubt that the defendant knew the victim to be mentally deficient.

---

[3] The record does *not* reflect whether the court intended its ruling on waiver of cross-examination to be limited only to cross-examination of the victim or did it extend to cross-examination of the state's other witnesses (the victim's mother, aunt and Captain Dilley.) Nevertheless, the defendant did not attempt to recall any of the prosecution's witnesses adversely after the statement was admitted.

The court also denied the motion to dismiss the information as being too broad because it recited that the offense occurred on or about August 15, 1975.

The court denied the motion for a new trial and found the defendant guilty of having sexual intercourse with a child on or about August 15, 1975 as charged. The defendant asked the trial court to make a finding of fact as to the period of time in which the court was convinced beyond a reasonable doubt the act had occurred but the court declined stating that the finding of on or about August 15th was sufficient.

The court sentenced the defendant to an indeterminate term of not more than twenty-four months, and ordered the sentence to be served consecutive to any sentence the defendant was then serving. A judgment of conviction was filed March 23, 1977.

The defendant has filed writs of error requesting this court to review the trial court's judgment of conviction and order denying him a new trial.

*ISSUES*

1. Was the evidence produced at trial sufficient to sustain the trial court's finding of guilt?

2. Was the allegation that the offense occurred on or about the 15th of August sufficient to apprise the defendant of the charges against him?

3. Did the trial court err in admitting a prior statement of the victim?

On appeal the defendant contends that the evidence introduced at trial was insufficient to convict him of having sexual intercourse with a minor. The trial court's finding of guilt is based primarily on the testimony of the victim. The defendant claims that the victim's testimony is unreliable because she admitted that she could not remember having sexual intercourse with the defendant. She also stated that her account of the incident was

based on what she was told to say by her mother, aunt and the prosecutor. Thus the appellant claims that Sandra's testimony was "impeached" and will not support a conviction, especially since the defendant took the stand and denied having had intercourse.

If the defendant is arguing in effect that Sandra is incompetent to testify because she had no personal knowledge or independent recall he has waited too long to raise the objection. An objection to the witness' competency to testify should have been made after a thorough *voir dire* examination of the witness and prior to the administration of the oath and taking of substantive testimony. The failure to *voir dire* the witness and the failure to object to the testimony of the witness at that time constitutes waiver of his right to challenge the testimony on grounds of incompetency. *Simpson v. State,* 83 Wis.2d 494, 266 N.W.2d 270 (1978), quoting from *Holmes v. State,* 76 Wis.2d 259, 251 N.W.2d 56 (1977); *Collier v. State,* 30 Wis.2d, 101, 140 N.W.2d 252 (1966).

The statement Sandra gave on cross-examination that she did not independently recall an act of sexual intercourse with the defendant was inconsistent with her testimony on direct and redirect examination. On those occasions Sandra appeared to have an independent recall of the incident and she also insisted that her mother told her only "to tell the truth." Where there is conflict in a witness' testimony it is the province of the trier of fact, the court in this case, to determine the weight and credibility to be given her testimony. *Gauthier v. State,* 28 Wis.2d 412, 137 N.W.2d 101 (1965); *Wheeler v. State,* 87 Wis.2d 626, 275 N.W.2d 651 (1979).

The trial court found Sandra's testimony more convincing than that of the defendant. On appeal this court

will not upset the trier of fact's determination of the weight and credibility to be given a witness' testimony:

". . . only when the evidence that the trier of fact has relied upon is inherently or patently incredible that the appellate court will substitute its judgment for that of the fact finder, who has the great advantage of being present at the trial." *Gauthier v. State, supra* at 416.

In *State v. Clark,* 87 Wis.2d 804, 275 N.W.2d 715 (1979) we held that inherently or patently incredible evidence is that evidence which is ". . . in conflict with nature or fully established or conceded facts. . . ." *Id.* at 816.

Sandra's admission in response to the defense attorney's rapid and confusing cross-examination that she could not remember having had sexual intercourse with the defendant does not make her testimony patently incredible as a matter of law in view of the fact that:

1. Sandra later remembered being in the car with the defendant at the lake;

2. On redirect examination she stated that her mother did not tell her what to say, but only "told me to tell the truth";

3. The testimony of Sandra that created the inconsistencies resulted from responses elicited from her during cross-examination and suggested by the defense counsel's questions. Sandra, with the mentality of a six year old, was easily confused and there is evidence indicating that her inconsistent testimony occurred as a result of her being confused. The trial court, at one point during the cross-examination, admonished defense counsel to ". . . [S]low down. This is a child witness we have on the stand." Sandra also indicated to defense counsel that she couldn't understand what he was asking because "You went so fast I couldn't understand you." Also, on redirect, in response to the question of whether she remembered what defense counsel just asked her, she said

"I just remember some of it. I couldn't get all of it."
In its search for the truth, the court is obligated to protect a witness, especially a minor, and, more importantly, a mentally retarded minor.

4. Expert testimony established that Sandra was more likely to remember visual stimuli (especially occurrences which were out of the ordinary, such as one's initial experience of sexual intercourse) rather than auditory or sound stimuli (such as the questions being asked by defense counsel) and thus this could account for the inconsistencies in her testimony and it also reinforces her testimony that she remembers being in the car with the defendant around the middle of August.

5. We know of no case law holding that evidence of mental retardation or mental defectiveness of itself renders a witness' testimony incredible as a matter of law. Therefore, we hold Sandra's testimony not to be patently incredible as a matter of law and thus it was for the trier of fact, the court in this case, to weigh and evaluate the credibility of her testimony. We will not substitute our judgment on the witness' credibility for that of the trial judge, the trier of fact, who was present at the time the testimony was given and had the opportunity to observe the witness' demeanor while on the stand. *Sy-vock v. State,* 61 Wis.2d 411, 213 N.W.2d 11 (1973).

In addition to challenging Sandra's credibility the defendant also contends that because she stated at one point that she did not remember the incident of sexual intercourse and only testified as to what she had been told to say the state was required to provide corroborating evidence. Support for the defendant's position can be found in the case of *Donovan v. State,* 140 Wis. 570, 122 N.W. 1022 (1909) where the court required corroboration of a feebleminded witness' testimony. It should be pointed out that in that case the supreme court held

". . . her story was intrinsically improbable and almost incredible." *Id.* at 571. However, as a general rule the conviction of a sex crime frequently rests upon the uncorroborated testimony of a complaining witness. *State v. Pickett,* 259 Wis. 593, 49 N.W.2d 712 (1951). Nonetheless, this court has also held that ". . . [w]here the testimony of the prosecuting witness bears upon its face evidence of its unreliability, to sustain a conviction there should be corroboration by other evidence as to the principal facts relied on to constitute the crime." *O'Boyle v. State,* 100 Wis. 296, 300, 75 N.W. 989 (1898); *Syvock v. State, supra.* Corroboration of Sandra's testimony in this case is found in the medical testimony of Dr. Cohen that established that she had been pregnant but suffered an incomplete spontaneous abortion. The doctor called by the prosecution testified, to a reasonable degree of medical certainty, that conception occurred on or about August 15th, in the time period that Sandra stated that she had had sexual intercourse with the defendant in his car. We hold this medical testimony sufficiently corroborated the substance of her testimony.

In view of our conclusion that Sandra's testimony was not patently incredible the trial court properly considered and weighed her testimony and acted reasonably when finding the defendant guilty of sexual intercourse with a minor. The evidence produced at trial and considered by the court, including Sandra's testimony and corroborating medical testimony, meets the test for the sufficiency of the evidence as stated in *Krueger v. State,* 84 Wis.2d 171, 267 N.W.2d 607 (1977):

". . . when the question of the sufficiency of the evidence is presented on appeal in a criminal case the only question for this court is whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable

doubt. . . . This ultimate test is the same whether the trier of the facts is a court or a jury. . . . The test is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true.

". . . Stating the rule conversely for the sake of clarity, the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.' *White v. State, supra* at 677–78, quoting *Lock v. State,* 31 Wis.2d 110, 114–15, 142 N.W.2d 183 (1966)." *Id.* at 282–83. *See also: State v. Clark, supra.*

Therefore, we hold the evidence adduced at trial and rationally considered by the court was sufficient to prove the defendant's guilt beyond a reasonable doubt.

Secondly, the defendant challenges the sufficiency of the state's allegation that the act of intercourse occurred on or about August 15, 1975. The state could not establish a more specific date of the offense as the victim could not recall the exact date of the offense, although she did remember that it occurred after her aunt had returned from her vacation on August 9th.

The state attempted to establish the date of the offense through the testimony of Dr. Cohen who examined Sandra on November 24, 1975 following her incomplete spontaneous abortion. Dr. Cohen testified to a reasonable degree of medical certainty that he believed the most likely date of conception to be in the middle of August, 1975, between the second or third weeks.

The defense attempted to counter Dr. Cohen's testimony with the testimony of a Dr. Wilson, an emergency room physician, who also examined the victim. Dr. Wil-

son testified that he estimated the victim to be 18 weeks pregnant at the time of the spontaneous abortion; thus conception would probably have occurred during the second week of July. However, Dr. Wilson conceded that it was also possible that she was only 15 weeks pregnant at the time he examined her and thus conception could have occurred in the middle of August.

As a general rule this court has held:

". . . in an information for such an offense a time should be specifically alleged as that on which such offense was committed. Yet unless some material right of the defendant is affected, as for example when such change might bring the alleged offense within some period of statutory limitation, the prosecution is not formally tied to any such date and may prove the commission of the offense charged on some other day within a reasonable limitation." *Hess v. State,* 174 Wis. 96, 99, 181 N.W. 725 (1921).

Nevertheless, in *Robinson v. State,* 143 Wis. 205, 126 N.W. 750 (1910), in a fact situation similar to the present case involving a single act of intercourse with a child of diminished mental capacity, this court held that there was no error in sustaining a conviction for an offense committed at a time prior to the time charged in the information. Also, in *State v. Sirisun,* 90 Wis.2d 58, 279 N.W.2d 484 (Ct. App. 1979) it was held that the question of ". . . a prosecutrix' inability to connect the alleged crime with a particular date goes to the issue of credibility, and thus is a matter for consideration by the jury." *Id.* at 64. In this case the trier of fact was the court and the same rule of law applies. Thus, failure to prove the specific date of the offense is not fatal to the state's case against the defendant. The credibility of the victim's testimony and the conflict between the testimony of the two expert witnesses, *i.e.,* the doctors, was for the

trier of fact to consider and resolve. *Gedicks v. State*, 62 Wis.2d 74, 214 N.W.2d 569 (1974). The trial court, as the trier of fact, after weighing the testimony found the evidence presented by the state to be more convincing and we hold the prosecution's evidence sufficient to meet the quantum of proof necessary to prove beyond a reasonable doubt that the offense occurred on or about August 15, 1975.

The defendant's motion for a new trial also raises the related claim that he was denied a fair trial by not having been apprised of the date on which the crime with which he is charged took place. The defense's contention is that the state's allegation that the offense occurred on or about August 15, 1975 did not sufficiently specify when the offense took place and is, therefore, in violation of art. I, sec. 7 of the Wisconsin Constitution.[4] However, it is interesting to note that the defendant did not argue this point in his brief.

This court in *State v. George*, 69 Wis.2d 92, 230 N.W. 2d 253 (1975) stated that the time of commission of a crime need not be alleged with precision where it is not a material element of the offense charged. *Hawkins v. State*, 205 Wis. 620, 624, 238 N.W. 511 (1931). However, the scope of the state's latitude in this respect is restricted by the due process clause of the Wisconsin Constitution, art. I, sec. 8,[5] and by art. I, sec. 7 of the Wisconsin

---

[4] "In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecution by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law."

[5] "No person shall be held to answer for a criminal offense without due process of law, and no person for the same offense

Constitution and the sixth amendment to the United States Constitution which guarantee to an accused the right to be informed of the nature and cause of the accusation. *Id.* at 96–97.

In *Holesome v. State,* 40 Wis.2d 95, 161 N.W.2d 283 (1968), this court established a two-prong test for determining the adequacy of a complaint:

". . . In order to determine the sufficiency of the charge, two factors are considered. They are, whether the accusation is such that the defendant determine [sic] whether it states an offense to which he is able to plead and prepare a defense and whether conviction or acquittal is a bar to another prosecution for the same offense." *Id.* at 102.

There is no question that the second prong of the test preventing another prosecution for the same offense is met because only one act of sexual intercourse is at issue in this case according to the victim's testimony. Also, the state admitted that a conviction or an acquittal on that charge would bar another prosecution for the same act. Nor is there any question that the first prong of the test is met because the complaint accused the defendant of a specific criminal act and the defendant was able to understand and thus able to plead and prepare a defense. We hold that the allegation that the offense took place "on or about the 15th day of August" did not prejudice the defendant in the preparation of his defense and, therefore, he was not denied his right to a fair trial.

Lastly, the appellant contends that the trial court erred when it admitted into evidence Sandra's prior statement

shall be put twice in jeopardy of punishment, nor shall be compelled in any criminal case to be a witness against himself. All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great; and the privilege of the writ of habeas corpus shall not be suspended unless when, in cases of rebellion or invasion, the public safety may require it."

made to the sheriff. Upon a thorough reading of the record, it is evident her statement was consistent with her testimony given on direct examination and thus admissible pursuant to sec. 908.01(4)(a), Stats., to rebut an express or implied charge of recent fabrication or improper influence. Initially the trial court excluded the statement, however, after further consideration the judge *sua sponte* reversed his prior ruling and admitted the statement into evidence. The judge further ruled that the defendant would not be allowed to cross-examine Sandra about the statement because he previously had an opportunity to cross-examine her about the statement.

The defense argues:

1. The statement should not have been received in this case to rebut a charge of improper influence because the victim had previously testified that the statement itself was the subject of improper influence; and

2. The trial court's ruling at the time it admitted Sandra's statement into evidence that defense counsel was not entitled to cross-examine Sandra on the statement denied the defendant a fair trial.

Sandra's statement was admitted into evidence pursuant to sec. 908.01(4)(a), Stats., which provides that a witness' prior statement may be offered to rebut express or implied charges of recent fabrication or improper influence. At the trial the defendant attempted to impeach Sandra's testimony by establishing that Sandra was improperly influenced because she was told what to say by her mother, aunt and the prosecutor. If Sandra's statement was consistent with her direct examination testimony at trial and rebutted all or part of the defendant's claim that her testimony was the result of undue influence it would be admissible under the provisions of sec. 908.01(4)(a). There can be no doubt that the statement rebuts the charge that Sandra's testimony was unduly influenced by the prosecutor because the statement

was made prior to her having any contact with the prosecutor. Therefore, we conclude that the statement was properly admissible for the limited purpose of rebutting the defendant's charge of improper influence by the prosecutor. The fact that Sandra's statement may have been the result of undue influence exerted by another will not of itself prevent its admissibility, but rather it affects the weight to be given the statement by the trier of fact, the court in this case.

One of the preconditions for admission of a prior statement offered to rebut charges of fabrication or improper influence is that the defendant have the opportunity to cross-examine the witness concerning the statement. The state has taken the position and the trial court ruled, that the defendant had ample opportunity to cross-examine the victim about the statement at the time he conducted his limited cross-examination of her after her direct examination. However, at this time, the court upheld the defense's objection and excluded the statement. After the court's ruling the defendant, either for reasons of trial tactics or other reasons, did not cross-examine Sandra regarding the contents of her statement. Subsequently, the court *sua sponte* reversed its earlier ruling and admitted the statement into evidence. As applied to this case, the cross-examination requirement of sec. 908.-01 (4) (a), Stats., requires that a declarant be subject to cross-examination concerning the contents of a prior statement at the time the statement is received into evidence. Where the trial judge has previously excluded a statement and then reverses his ruling, the defendant's failure to examine the witness regarding the contents of the statement previously excluded cannot be viewed as a waiver of the right to cross-examine the declarant. Therefore, we hold that the trial court committed error when it denied the defendant the opportunity to cross-

examine Sandra about the statement previously excluded but now admitted into evidence. It should be pointed out that the trial court erred not in the act of admitting the statement itself into evidence but in the manner it was admitted in refusing to allow the defendant the opportunity to cross-examine the declarant concerning the content of the statement.

While the trial court's ruling admitting the statement and precluding defendant from cross-examining the victim regarding the statement was error, we conclude it was harmless error in this case for the following reasons:

1. This court has held in *Sturdevant v. State,* 49 Wis. 2d 142, 181 N.W.2d 523 (1970) that, in a trial to the court without a jury, admission of improper evidence is harmless error unless the court's finding would have been different had the evidence not been admitted:

" ' "In a case tried by the court the admission of improper evidence is to be regarded on appeal as having been harmless, unless it clearly appears that but therefor the finding would probably have been different." *Birmingham v. State,* (1938), 228 Wis. 448, 454, 279 N.W. 15 quoting from *Topolewski v. State* (1906), 130 Wis. 244, 109 N.W. 1037.' *Gauthier v. State* (1965), 28 Wis. 2d 412, 421, 137 N.W.2d 101." *Id.* at 149.

2. There was sufficient evidence, excluding the statement, to convict the defendant beyond a reasonable doubt. *Kelly v. State,* 75 Wis.2d 303, 249 N.W.2d 800 (1977). Specifically, we refer to Sandra's testimony that the defendant put his thing in her thing while in his car at Lake Koshkonong and her statement that the act took place after her aunt returned from vacation, August 9th. Further corroboration can be found in the testimony of Dr. Cohen who examined and treated Sandra for an incomplete spontaneous abortion and he also testified that conception occurred in the middle of August which San-

dra testified was approximately the time the defendant had intercourse with her.

3. The fact that the content of the prior statement was substantially cumulative to what Sandra testified to at trial; and

4. The defendant did, to a degree, cross-examine the reliability of the prior statement in his cross-examination of the victim.

We hold that the error committed by the trial court was harmless error and in view of our earlier holding that there was sufficient evidence adduced at trial to convict the defendant of sexual intercourse with a minor, the Judgment of conviction and order denying defendant a new trial are affirmed.

*By the Court.*—Judgment and order affirmed.