#23850-a-DG

**2006 SD 89**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

  v.

JOHN C. NUZUM,                            Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE WARREN G. JOHNSON
Judge

* * * *

LAWRENCE E. LONG
Attorney General

FRANK GEAGHAN
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.


DONALD D. RICHARDS
Richards Law Firm, P.C.
Spearfish, South Dakota                   Attorney for defendant
                                          and appellant.

* * * *

                                          CONSIDERED ON BRIEFS
                                          ON AUGUST 28, 2006

                                          OPINION FILED **10/18/06**

#23850

GILBERTSON, Chief Justice

[¶1.]      John C. Nuzum was convicted by a Meade County jury of two counts of Sexual Contact With a Child Under the Age of Sixteen and was sentenced to two consecutive 12-year terms.  He appeals his conviction on Count I.  We affirm.

## FACTS AND PROCEDURE

[¶2.]      John C. Nuzum (Nuzum) married Marla Evans (Evans) in 1999. Nuzum had four children from two prior marriages.  Evans also had four children from a prior marriage.  Nuzum and Evans divorced in July 2001.  Evans' youngest child from her previous marriage (herein referred to as M.V.) was 11 years old at the time.

[¶3.]      Following the divorce, Nuzum and M.V. continued to be friends.  M.V. looked up to Nuzum and thought of him like an uncle.  The two stayed in contact by telephone.  Nuzum was an over-the-road trucker and began inviting M.V. to accompany him on his trips.

[¶4.]      At some point during these trips, Nuzum began to sexually molest M.V.  On two separate occasions, Nuzum also invited M.V. to stay with him in Spearfish, South Dakota.  Since Nuzum lived there with his mother he would take M.V. to a local motel where he would molest the boy.  M.V. was still 11 years old when the molestations began.  Although, he was uncomfortable with what Nuzum was doing to him, he could not grasp the full extent of the wrongfulness of these acts.

[¶5.]      While M.V. was uncomfortable with these episodes of molestation, he still enjoyed the good times he was having with Nuzum.  He enjoyed traveling and seeing the country with Nuzum on the trucking trips.  M.V. also enjoyed the adult

things that Nuzum would let him do like shooting guns and drinking beer. Another of M.V.'s favorite activities with Nuzum was hunting. Nuzum took M.V. to hunt prairie chickens on several occasions.

[¶6.]     Some of these "chicken hunts" took place on the John O'Grady Ranch in Eastern Meade County near the hamlet of White Owl. Located next to his home, O'Grady had a bunkhouse used for guest quarters. It was there that Nuzum and M.V. would stay when hunting at O'Grady's. M.V. testified that on two separate occasions, once during October 2001, and again between September 1, and December 31, 2002, Nuzum molested him while they were staying in the bunkhouse.

[¶7.]     Nuzum was ultimately charged with two counts of Sexual Contact with a Child Under the Age of 16 in Lawrence County for the molestations occurring in Spearfish, South Dakota and two counts in Meade County for the molestations on the O'Grady Ranch. In addition, Nuzum was charged in Butte County with two counts for the same offense against one of M.V.'s siblings. This appeal focuses on issues arising out of Nuzum's conduct in Meade County. On February 17, 2005, Nuzum was convicted on both counts of Sexual Contact filed in Meade County.

[¶8.]     Nuzum raises two issues on appeal:

1.    Whether an alibi defense made the date of the offense charged in Count I material such that it was reversible error for the circuit court to give a jury instruction that allowed for a finding of guilt without proof of the exact date of the offense.

2.    Whether Nuzum established that it was factually impossible for him to commit the act charged in Count I such that he was entitled to a judgment of acquittal as a matter of law.

## STANDARD OF REVIEW

[¶9.]     This Court reviews the refusal of proposed jury instructions under the abuse of discretion standard.  State v. St. John, 2004 SD 15, ¶8, 675 NW2d 426, 427 (citing State v. Downing, 2002 SD 148, ¶26, 654 NW2d 793, 800 (citing State v. Webster, 2001 SD 141, ¶7, 637 NW2d 392, 394)).  A trial court has discretion in the wording and arrangement of its jury instructions, and therefore we generally review a trial court's decision to grant or deny a particular instruction under the abuse of discretion standard.  Vetter v. Cam Wal Elec. Co-op., Inc., 2006 SD 21, ¶10, 711 NW2d 612, 615 (citations omitted).  The manner in which this Court reviews a denial of a motion for judgment of acquittal is well established:

> The standard of review for denial of a motion for judgment of acquittal is whether the "evidence was sufficient to sustain the convictions." "When reviewing sufficiency of the evidence, this [C]ourt, considers the evidence in a light most favorable to the verdict." "A guilty verdict will not be set aside if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt." "We do not resolve conflicts in the evidence, pass on the credibility of the witnesses, determine the plausibility of an explanation, or weigh the evidence."

State v. Running Bird, 2002 SD 86, ¶19, 649 NW2d 609, 613 (quoting State v. Verhoef, 2001 SD 58, ¶22, 627 NW2d 437, 442) (internal citations omitted).

## ANALYSIS AND DECISION

[¶10.]     **1.     Whether an alibi defense made the date of the offense charged in Count I material such that it was reversible error for the circuit court to give a jury instruction that allowed for a finding of guilt without proof of the exact date of the offense.**

[¶11.]     Nuzum argues that the date on which the offense in Count I occurred became material when he raised an alibi defense.  He contends that the circuit

court erred with respect to Count I when it issued a jury instruction that did not require the State to establish the date of the offense with specificity. At Nuzum's trial, the following jury instruction was given:

> The Indictment charges that the offense was committed "on or about" a certain date. The proof need not establish with certainty the exact date of the offense alleged. It is sufficient if the evidence establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

South Dakota Pattern Jury Instruction 1-11-6. As a result, Nuzum asserts that his alibi, with respect to the October 2001 offense charged in Count I, was nullified.

[¶12.] Nuzum cites *People v. Jones*, 510 P2d 705, 713 (Cal 1973), *overruled on other grounds*, and *United States v. Goodrich*, 493 F2d 390, 393 (9thCir 1974) in support of his argument that the assertion of an alibi defense makes the date of an offense material. However, the facts of these cases are distinguishable from Nuzum's. In *Jones*, the date became material to the offense charged when a witness for the prosecution testified that a drug transaction occurred on a specific date. 510 P2d at 713-714. Again in *Goodrich*, the date was material because the prosecution based its case on a date specific offense and the defendant relied on the date when proffering an alibi defense. 493 F2d at 394.

[¶13.] Nuzum also points to *People v. Sutter*, 685 NE2d 1023, 1029 (IllApp4d 1997); *State v. Infante*, 596 A2d 1289, 1291 (Vt 1991) and *State v. Brown*, 213 P2d 305, 307-08 (Wash 1950) to bear his contention that the instruction should have restricted the jury's determination of guilt to a finding that the offense occurred on a specific date. The facts in these cases are also distinguishable from the instant case.

[¶14.]     In *Sutter*, the information charged that the offense occurred "on or about" July 30, 1995, but the evidence presented at trial indicated the offense occurred if at all on the afternoon of that date. 685 NE2d at 1028. Error resulted from the jury being instructed that the prosecution was not required to prove the offense occurred on the particular date. *Id.* at 1027. Once again in *Brown*, although the charging information used general wording with respect to the date of the offense, the prosecution elected to build its case on the ground that the offense occurred on a specific date. 213 P2d at 307. A jury instruction that relieved the prosecution from showing the offense occurred on that exact date was held to be erroneous. *Id.* In *Infante*, both the charging information and evidence presented at trial specified the offense occurred on a particular date. 596 A2d at 1291. Error occurred when the trial court refused to instruct the jury that a determination of guilt required finding that the offense occurred on the date charged. *Id.* at 1290.

[¶15.]     Nuzum offered an alibi defense, largely consisting of cellular phone records, to prove that he could not have been present at the O'Grady Ranch when the offense charged in Count I was alleged to have been committed. Nuzum now postures that the State, in its indictment and evidence presented at trial, did in fact specify a date on which the Sexual Contact offense charged in Count I occurred. This is incorrect.

[¶16.]     Count I of the December 8, 2004, indictment charges that Nuzum committed the offense "on or about October 26, 2001." The evidence presented at trial did anything but tie the date of the offense with specificity to October 26, 2001. The transcript of M.V.'s trial testimony contains in excess of 50 pages covering

attempts by the State and defense counsel to help him remember with particularity dates from three years earlier when he was 11 years old.  In an effort to jog his memory, M.V. was asked to review cellular phone records; he looked at school attendance records; he was asked when snow was on the ground; he was asked about people that were present at the O'Grady Ranch in relation to specific events; he was asked about the beginning and ending of grouse hunting seasons, including the best time of the season to hunt grouse and whether on a particular year it got cold in November.  At no time, whether during law enforcement's investigation, at trial or other proceedings was M.V. able to state with conviction the dates on which he was molested by Nuzum.

[¶17.]     When asked by the prosecutor about his difficulty with particular dates related to the molestations at O'Grady's, M.V. replied, "It's something I didn't want to remember, . . .  I didn't have a calendar by or think about it, and it was something I wanted to forget. . . ."  What M.V. was able to be specific about were the details of the molestations in the sleeper of Nuzum's truck while they were on over-the-road trips, the two molestations by Nuzum at the Super-8 motel in Spearfish, and the molestations on two occasions in the bunkhouse at the O'Grady Ranch.  He was able to recall with graphic detail the sexual assaults to which Nuzum had subjected him.  M.V. knew that he had been to O'Grady's with Nuzum to hunt in successive years.  Neither the indictment nor the State's evidence at trial offered October 26, 2001 as an exact date on which the offense occurred.  Rather, based on the totality of the evidence, that date and a reasonable period encompassing it were offered as the time that the offense charged in Count I occurred.

#23850

[¶18.] "We have previously held in cases of sexual abuse of minors that time is not a material element of the offense." State v. Darby 1996 SD 127, ¶10, 556 NW2d 311, 316. *See also* State v. Floody, 481 NW2d 242, 247 (SD 1992); State v. Basker, 468 NW2d 413, 416 (SD 1991); State v. Wurtz, 436 NW2d 839, 842 (SD 1989); State v. Swallow, 350 NW2d 606, 608 (SD 1984). In *Darby*, we stated that our rationale for this holding was adopted from the Minnesota Supreme Court:

> We also take note of the nature of the offenses charged, and the fact that they involve minor children. The Minnesota Supreme Court, in dealing with child molestation cases, has stated that although an information should be as specific as possible with respect to time, it is not always possible to know with certainty when the offenses occurred; this is especially true in cases where there is a minor victim who does not immediately complain to the authorities; thus, specificity of time is not always required in the information.

1996 SD 127, ¶10, 556 NW2d at 316 (citing State v. Bird, 292 NW2d 3 (Minn 1980); State v. Waukazo, 269 NW2d 373 (Minn 1978)). A defendant cannot make the date of an offense material by merely offering an alibi defense. *Floody*, 481 NW2d at 248 (citing State v. Goddard, 138 P 243, 246 (Or 1914)). "The fact that an alibi defense is interposed does not, ipso facto, make the 'on or about' instruction erroneous." State v. Nelson, 310 NW2d 777, 779 (SD 1981) (citing State v. Danley, 513 P2d 96 (WashApp2d 1973)). In *Nelson* this Court held, as long as the jury is not misled into improperly rejecting the defendant's alibi defense, the use of "on or about" language in a jury instruction, with respect to a particular date, is not prejudicial to the defendant when the date is indefinite both in the indictment and in the evidence presented at trial. 310 NW2d at 780.

[¶19.]    M.V. was victimized by Nuzum over a period of two years. After breaking off relations with Nuzum following the 2002 trip to O'Grady's, M.V. for a year and half attempted to bury the painful and humiliating experience. It was not until he confided in his mother in March 2004, that the acts of Nuzum came to light. It is reasonable to conclude that what remains etched in M.V.'s mind is neither the date on the calendar nor the time on the clock when he was molested, but his memory of being confined with a grown man who forced him to do sexual acts.

[¶20.]    Under our statute, the offense of Sexual Contact With a Child is accomplished when "any person, sixteen years of age or older," "knowingly engages in sexual contact with another person, other than that person's spouse if the other person is under the age of sixteen years. . . ." SDCL 22-22-7. Nuzum now claims that his interposition of an alibi defense turns settled law on its ear by ipso facto adding a new material element to the offense – time. We do not agree.

[¶21.]    Nuzum's argument might perhaps be more persuasive if he could demonstrate that he specifically relied on the October 26, 2001 date in constructing his alibi. The indictment alleging the offense to have occurred "on or about" that date was filed on December 8, 2004. Thus, Nuzum was fully apprised of the indefinite reference to date in the indictment by the time he filed his notice of intent to offer an alibi on January 18, 2005. For him to assert otherwise at this time is not credible.

[¶22.]    Nuzum also fails to show that the jury was in any way improperly misled into rejecting his alibi by the challenged jury instruction. It is entirely plausible that the jury merely did not believe that Nuzum's alibi, accepted in its

entirety, foreclosed his ability to commit the crime on October 26, 2001. Nuzum offers cell phone records to prove that he could not have been at the O'Grady Ranch on October 26, 2001. These records show that he made three calls on that day, one from Gillette, Wyoming in the afternoon and two from Spearfish, South Dakota at 8:14 p.m. and 8:16 p.m.. M.V. testified that the molestation occurred the night before the hunt. Nuzum's alibi witness testified the hunt was on October 27, 2001. The South Dakota Official Highway Map shows the distance between Spearfish and White Owl to be approximately 82 miles. It is reasonable to conclude that the jury inferred notwithstanding his alibi, that Nuzum could have been at the O'Grady Ranch on the night of October 26, 2001.

[¶23.] The date of the offense in Count I was not established with certainty in the indictment or at trial. Nuzum did not rely on a precise date in the indictment. Nor has he shown prejudice resulting from the jury instruction. Therefore, we find no merit to his argument on this issue.

[¶24.] **2. Whether Nuzum established that it was factually impossible for him to commit the act charged in Count I such that he was entitled to a judgment of acquittal as a matter of law.**

[¶25.] Nuzum asks for a judgment of acquittal on Count I in the indictment. He argues that he was entitled to an acquittal on his motion for a directed verdict because his cellular phone records establish that he could not have been at the O'Grady Ranch on October 26, 2001. Clearly he could have been. Nuzum's cellular phone records show that he could have in fact been present at the O'Grady Ranch on that night. Since there was sufficient evidence from which the jury could draw this inference we find his claim to be without merit.

#23850

[¶26.]  Affirmed.

[¶27.]  SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices,

concur.